# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| Draft Top, LLC, | ) |
|         Plaintiff, | ) ) ) ) ) No. 21-cv-3792 |
| v. | ) ) ) |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | ) ) ) **DEMAND FOR JURY TRIAL** ) ) ) |
|         Defendants. | ) |

## AMENDED COMPLAINT

Plaintiff Draft Top, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the partnerships and unincorporated associations identified in Schedule "A" (together, "Defendants"). In support thereof, Plaintiff states as follows:

### I.    JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and this Judicial District, and the acts and events giving

1

rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial Internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants are directly reaching out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores through which Illinois residents can purchase products bearing infringing and/or counterfeit versions of Plaintiff's product. Each of the individual Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's trademarks and/or copyrights to residents of Illinois. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

4. Plaintiff filed this action to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products, and marketing these counterfeit products using versions of Plaintiff's federally-registered trademarks "DRAFT TOP" (U.S. Reg. Nos. 5205017, 5205018, and 5221958) and "DRINK TOPLESS" (U.S. Reg. Nos. 5205019 and 5205020) ("Plaintiff's Trademarks"), which Plaintiff affixes to genuine products and uses in its marketing

campaigns. True, correct, and complete copies of Plaintiff's Trademark registrations are attached as **Group Exhibit 1**. The Defendants create Internet stores ("the Defendant Internet Stores") by the dozens and design them to appear to be selling genuine copies of Plaintiff's Draft Top and Drink Topless products, while actually selling counterfeit versions to unknowing consumers. Plaintiff is also the owner of several copyrighted photographs and audiovisual works (U.S. Reg. Nos. VA-2-249-963, Pau 4-076-830, and VA 2-249-968, attached as **Group Exhibit 2**) ("Plaintiff's Works"), which it also uses in connection with the sale and advertising of Plaintiff's genuine products.

5. While there is an anonymity between the Defendants, their Internet Stores share unique common identifiers, such as design elements and similarities of the counterfeit products offered for sale. These similarities indicate that the Defendant Internet Stores share common manufacturing sources, thereby establishing that Defendants' counterfeiting and infringement operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interconnection of their counterfeiting operation, including changing the names of their stores frequently, opening new stores, helping their friends open stores, and making subtle changes to their products. Plaintiff is forced to file this action to combat Defendants' counterfeiting and willful infringement of Plaintiff's registered copyrights and trademarks, as well as to protect unknowing consumers from purchasing counterfeit products over the Internet in the belief that those products are authorized by Draft Top. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff Draft Top, LLC**

6. Plaintiff is a New Jersey limited liability corporation and is the creator and seller of the Draft Top, a hand-operated cutting tool that effectively and safely removes the top portion of a beverage can. Plaintiff sells these high-quality hand-operated cutting tool through its brand The Draft Top.

7. Plaintiff started its brand The Draft Top in 2015 through the Kickstarter fundraising platform. Plaintiff's founder and innovator created the unique Draft Top design after finding a need to change the experience of drinking beverages out of cans in an outdoor setting. The Kickstarter website page for Draft Top details Plaintiff's founder's original design, idea, and inspiration behind the product. In 2016, Plaintiff introduced a variation on the Draft Top design marketed under Plaintiff's DRINK TOPLESS brand. Plaintiff's unique products have been advertised with its federally registered trademarks for several years. Plaintiff continues to heavily advertise its unique products through advertisements demonstrating both its technology and trademarked names through several social media distribution channels. Its advertisements and websites feature original content and reviews for Draft Top and Drink Topless branded products.

8. The Product is a recognized product that has been featured in nationally distributed media sources. Plaintiff's trademarked products are also regularly featured as unique gadgets and gift ideas from nationally distributed media sources. The genuine products have been positively reviewed on numerous sites that sell its genuine and federally trademarked products.

9. Plaintiff is engaged in the business of manufacturing, distributing and retailing these high-quality blade tools, such as Draft Top within the Northern District of Illinois under the

Federally registered trademarks DRAFT TOP and DRINK TOPLESS. Defendants' sales of the counterfeit Draft Top product in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

10. Plaintiff's brand, symbolized by the DRAFT TOP and DRINK TOPLESS trademarks, is a recognized brand of high-quality blade can openers. The DRAFT TOP trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registration of Plaintiff's Marks constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use these trademarks pursuant to 15 U.S.C. § 1057(b). The trademarks have been continuously used and never abandoned since their first use.

**The Defendants and Defendant Internet Stores**

11. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit Draft Top products to consumers within the United States, including Illinois and in this Judicial District.

12. Defendants are an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine Draft Top products, while they actually sell inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique common identifiers, such as common design elements, the same or similar counterfeit Draft Top products that they offer for sale, similar counterfeit Draft Top

product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced counterfeit products and volume sale discounts. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the precise scope and the exact interconnections of their counterfeit network. In the event Plaintiff discovers additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## THE DEFENDANTS' UNLAWFUL CONDUCT

13. The success of Plaintiff's brand has resulted in significant counterfeiting and infringement. Consequently, Plaintiff has identified numerous marketplace listings on eCommerce platforms including, but not limited to, AliExpress, Alibaba, Amazon, DHGate, eBay, Gearbest, Joom, Shopify, and Wish, including the Defendant Aliases, which have been offering for sale, selling, and exporting illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Aliases. eCommerce sales, including eCommerce Internet Stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 3**, Department of Homeland Security, *Fiscal Year 2019 Seizure Statistics Report*. According to Customs and Border Patrol's ("CBP") report, over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Approximately 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

14. Counterfeiting rings are able to take advantage of the anonymity provided by the Internet which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 4**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating eCommerce Internet Stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

15. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the DRAFT TOP and DRINK TOPLESS trademarks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. Defendants Internet Stores also use Plaintiff's copyrighted photos to advertise their counterfeit Draft Top products, obviously copies of the genuine photos that Plaintiff uses on its webpage to sell and advertise its genuine and original Draft Top products.

16. Defendants often go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services and Virtual Private

Networks that conceal the owners' identities, locations, and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of the Complaint, as well as other presently unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

17. The counterfeit Draft Top products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit Draft Top products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. Some similarities include the identical text description of the product, Plaintiff's copyrighted images, and other advertising information that is used by several individual Defendant Internet Stores over multiple eCommerce platforms.

18. Upon information and belief, Defendants also deceive unknowing customers by using the DRAFT TOP and DRINK TOPLESS trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's Draft Top product. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming to ensure that the Defendant Internet Stores listings show up at or near the top of relevant search results to Plaintiff's detriment. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit Draft Top products.

19. Defendants have manufactured, imported, distributed, offered for sale, and sold counterfeit Draft Top products using Plaintiff's DRAFT TOP and DRINK TOPLESS trademarks and continue to do so. Defendants' use of Plaintiff's Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the counterfeit Draft Top products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

20. Without authorization or license from Plaintiff, Defendants have knowingly and willfully used and continue to use the DRAFT TOP and DRINK TOPLESS trademarks in connection with the advertisement, offer for sale, and sale of counterfeit Draft Top products, through, inter alia, the Internet. The counterfeit Draft Top products are not genuine products of the Plaintiff. The Plaintiff did not manufacture, inspect, or package the counterfeit Draft Top products and did not approve the counterfeit Draft Top products for sale or distribution. Each of the Defendants Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit Draft Top products into the United States, including Illinois.

21. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling counterfeit Draft Top products that infringe upon the DRAFT TOP and DRINK TOPLESS trademarks unless preliminarily and permanently enjoined.

22. Defendants' use of the DRAFT TOP and DRINK TOPLESS trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit Draft Top products, including the sale of counterfeit Draft Top products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

23. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 22.

24. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered DRAFT TOP and DRINK TOPLESS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under Plaintiff's Trademarks.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's Trademarks without Plaintiff's permission.

26. Plaintiff is the exclusive owner of Plaintiff's Marks. The United States Registrations for Plaintiff's Marks remain in full force and effect. Upon information and belief, Defendants have actual knowledge of Plaintiff's rights in Plaintiff's Marks, as well as constructive knowledge under Section 22 of the Lanham Act, 15 U.S.C. § 1072. In spite of that knowledge, Defendants continue willfully infringing and intentionally using counterfeits of Plaintiff's Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Plaintiff's Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 28.

30. Defendants' promotion, marketing, offering for sale, and sale of infringing and counterfeit Draft Top and Drink Topless branded products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit version of Plaintiff's Draft Top product.

31. By using Plaintiff's Trademarks in connection with the sale of counterfeit Draft Top product, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit Plaintiff's Draft Top product.

32. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit Draft Top product to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

33. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, *et seq.*)

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit Draft Top product as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's genuine Draft Top product, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

36. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

37. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39. Plaintiff's Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and each is covered by registration of the Copyright in that work.

40. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted Plaintiff's Works, including derivative works.

41. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's Work, Defendants wrongfully created copies of the copyrighted Plaintiff's Works without Plaintiff's consent and engaged in acts of widespread infringement through posting the works via online websites and digital markets, and the creation and sale of prints.

42. Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's Works by producing and distributing reproductions without Plaintiff's permission.

43. Defendants, without the permission or consent of Plaintiff, have, and continue to sell online infringing derivative works of Plaintiff's Works. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101, et seq.).

44. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's Works.

45. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

46. As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

47. The conduct of Defendants is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in damages. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, plates, and other embodiments of Plaintiff's Works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

## COUNT V
## CIVIL CONSPIRACY

48. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47.

49. Plaintiff is informed and believes and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offering for sale, or sale of counterfeit Draft Top products in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

50. The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine Plaintiff and its business by unfairly competing against it as described above.

51. The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose, and objective. Thus, by entering into the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and/or induced all of the foregoing unlawful acts and misconduct.

52. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiff has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law.

53. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Plaintiff's Draft Top product.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by through, under, or in active concert with them be temporarily, preliminary, and permanently enjoined and restrained from:

1. Using Plaintiff's Trademarks and Works in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's product, or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks or Works.

2. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff

and approved by Plaintiff for sale under Plaintiff's Trademarks and associated with or derived from Plaintiff's Works;

3. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff;

4. Further infringing Plaintiff's Trademarks and Works and damaging Plaintiff's goodwill;

5. Otherwise competing unfairly with Plaintiff in any manner;

6. Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, product or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

7. Selling or transferring control of the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products; and,

8. Offering for sale, or sale of any product bearing Plaintiff's Works or reproductions, copies, or colorable imitations thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks and Works; and,

9. Registering any additional domain names that use or incorporate any of Plaintiff's Trademarks or Works, and,

b. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

1. Displaying images protected by Plaintiff's Trademarks or Works in connection with the distribution, advertising, offer for sale, and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks and Works; and,

2. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by Plaintiff's Trademark and Works or any reproductions, counterfeit copies, or colorable imitations thereof; and,

c. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

d. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Amazon and Alibaba Group Holding Ltd., Alipay.com Co., Ltd., and any related Alibaba entities (collectively "Alibaba"); social media platforms such as: Facebook, YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating

access to any or all webstore product listings through which Defendants engage in the sale of counterfeit products using Plaintiff's Trademarks and Works;

  e. That each Defendant account for and pay to Plaintiff all profits realized by that Defendant by reason of its unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof, as provided by 15 U.S.C. § 1117;

  f. For Judgment in favor of Plaintiff against each Defendant that they have: (a) willfully infringed Plaintiff's rights in federally-registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

  g. For Judgment in favor of Plaintiff against each Defendant that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and, (b) otherwise injured the business reputation and business of Plaintiffs by Defendants' acts and conduct set forth in this Complaint;

  h. For Judgment in favor of Plaintiff and against each Defendant for actual damages or for statutory damages pursuant to 17 U.S.C. § 504(c)(1) of up to $30,000 or pursuant to 17 U.S.C. § 504(c)(2) of $150,000 if such infringement is established as willful, for each and every one of Plaintiff's Works found to be infringed.

  i. For Judgment in favor of Plaintiff against each Defendant for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiff, in an amount to be determined at trial;

j. In the alternative, that Plaintiff be awarded statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Trademarks;

k. That Plaintiff be awarded its reasonable attorneys' fees and costs against Defendants, jointly and severally; and,

l. That Plaintiff be awarded any and all additional relief that this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: July 15, 2021

Respectfully Submitted,

/s/James E. Judge/

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Flener IP Law, LLC
77 W. Washington St., Suite 800
Chicago IL 60602
(312) 724-8874
jjudge@fleneriplaw.com