IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DRAFT TOP, LLC,**<br><br>            Plaintiff,<br><br>    v.<br><br>**THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A"**<br><br>            Defendants. | Civil Action No. 1:21-cv-3792<br><br>Hon. Matthew Kennelly<br>Mag. Sheila M. Finnegan |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION, ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. ARGUMENT AND AUTHORITIES ............................................................................... 5

   A. Legal Standards Regarding Preliminary Injunction ..................................................... 5

   B. The PIO Should Be Denied Because Plaintiff Is Unlikely to Succeed on The Merits 6

   C. The PIO Should Be Denied Because Plaintiff Has Not Shown Irreparable Harm ..... 8

   D. The Balance of Hardships Weighs in Favor of Denying a PIO ................................... 9

   E. The Public Interest Would Not Be Served by An Injunction. ..................................... 10

   F. The Equitable Relief Sought Is Not Appropriate ........................................................ 10

   G. Alternatively, The PIO Is Not Supported By A Sufficient Bond ................................ 11

IV. CONCLUSION ................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Andrx Pharm., Inc.*,
  452 F.3d 1331 (Fed. Cir. 2006) ................................................................................. 9
*Abbott Labs. v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ......................................................................................... 5
*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  678 F.3d 1314 (Fed. Cir. 2012) ................................................................................. 9
*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) ................................................................................... 9
*Fabick, Inc. v. JFTCO, Inc.*,
  944 F.3d 649 (7th Cir. 2019) ..................................................................................... 5
*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ................................................................................... 5
*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*,
  582 F.3d 721 (7th Cir. 2009) ..................................................................................... 5
*Judge v. Quinn*,
  612 F.3d 537 (7th Cir. 2010) ..................................................................................... 5
*Liquid Controls Corp. v. Liquid Control Corp.*,
  802 F.2d 934 (7th Cir. 1986) ..................................................................................... 6
*M.B.H. Enter., Inc. v. WOKY, Inc.*,
  633 F.2d 50 (7th Cir. 1980) ....................................................................................... 7
*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ................................................................................................... 6
*Nokia Corp. v. InterDigital, Inc.*,
  645 F.3d 553 (2d Cir. 2011) ..................................................................................... 11
*Orr v. Shicker*,
  953 F.3d 490 (7th Cir. 2020) ..................................................................................... 5
*Packman v. Chi. Tribune Co.*,
  267 F.3d. 628 (7th Cir. 2001) .................................................................................... 6
*Paice LLC v. Toyota Motor Corp.*,
  2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) .......................................................... 9
*Rust Env't & Infrastructure, Inc. v. Teunissen*,
  131 F.3d 1210 (7th Cir. 1997) ................................................................................... 6
*Sands, Taylor Wood Co. v. Quaker Oats Co.*,
  978 F.2d 947 (7th Cir. 1992) ..................................................................................... 7
*Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*,
  335 F.3d 235 (3d Cir. 2003) .................................................................................... 11
*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
  64 F.3d 1055 (7th Cir. 1995) ..................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ...................................................................................................5, 8

**Statutes**

15 U.S.C. § 1114................................................................................................................ 6, 8
15 U.S.C. § 1115................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................................... 11

iii

Defendants yhxclx2010 (No. 663), rearrange518 (Doe No. 600), laptopallfor87 (Doe No. 551), dr3ag8on (Doe No. 497), leihuyoumechenger (Doe No. 554), shanghai123456 (Doe No. 611), tinasbox (Doe No. 632), minseaa (Doe No. 573), fastdealblast (Doe No. 509), topkoo (Doe No. 637), sgostore (Doe No. 609), jewelryzhang888 (Doe No. 543), davidcoy (Doe No. 492), 4utoto (Doe No. 446), lucky.shop_7 (Doe No. 565), lucky.warm7 (Doe No. 566), 4hk8033 (Doe No. 445), qb.studio (Doe No. 593), lilybeibei (Doe No. 557), topwardrobe2014 (Doe No. 639), Wi3ndBre1aker (Doe No. 650), 1st.vzu (Doe No. 442), 1st.4u (Doe No. 441), shirlelyelt (Doe No. 614), priestlyy (Doe No. 590), Funnyatmosphere (Doe No. 519), butonto (Doe No. 478), excellbuying (Doe No. 504), dongmakjhg (Doe No. 496), gracefulvara (Doe No. 524), and in.studio (Doe No. 537), (collectively, "Defendants") respectfully submit this Response in Opposition to Plaintiff's Motion for Entry of A Preliminary Injunction, Asset Restraint, and Expedited Discovery (Dkt. No. 21).

## I. INTRODUCTION

A preliminary injunction order ("PIO") against Defendants should not be granted for a multitude of reasons. Frist, Plaintiff's request for a PIO should be rejected because it failed to fulfill its burden of persuasion to show it has a likelihood of success on the merits. Indeed, Plaintiff cannot show a likelihood of success on the merits as Plaintiff's own Motion and Exhibits in support show that Defendants offer their products for sale under the trademark "GO SWING" and do not use either of Plaintiff's trademarks or any colorable imitation thereof. Put simply, Plaintiff's Motion is baseless and entirely without

1

merit.[1] Second, Plaintiff's request for a PIO should also be rejected because it has not and cannot show irreparable harm. As a result, Plaintiff has failed to prove irreparable harm, and for this reason as well, Plaintiff's request for a PIO should be rejected.

Furthermore, neither the balance of hardship nor the public interest weighs in favor of granting a PIO where there has been no infringement. As discussed in more detail below, Defendants will suffer much greater harm if a PIO is granted than Plaintiff will if it is denied. The public will be harmed if Defendants are enjoined from selling other non-infringing products.

In the alternative, if the Court were to grant a PIO, it should be modified so that the bond is increased to at least $5,000,000. Plaintiff was ordered to submit a bond of $10,000. However, given the significant costs and damages to Defendants that could result from the injunction, this amount should be dramatically increased.

## II. BACKGROUND

This action stems from claims of trademark and copyright infringement filed by Plaintiff against Defendants on July 15, 2021, later amended on July 16, 2021, for the alleged infringement of Draft Top, LLC ("Plaintiff") copyrights and U.S. Trademark Reg. Nos. 5205017, 5205018, and 5221958 for "DRAFT TOP" and 5205019 and 5205020 for "DRINK TOPLESS". [Dkt. No. 5-1]. In its Amended Complaint, Plaintiff accuses more than 851 defendants of infringing its copyright and trademarks. *Id.* 5-2. However, Plaintiff's Motion is based solely upon its trademark rights and Plaintiff does not address

---

[1] For this reason, Defendants intend to move for a Motion to Show Cause why Plaintiff should not be sanctioned for the filing of this Motion.

2

any of the required factors for copyright infringement. As such, this Court should confine its analysis solely to the trademark rights that Plaintiff's motion is based upon.[2]

Defendants in this case are online stores that sell consumer goods through one prominent online e-commerce sites: eBay.com. Declaration of Jiahui Chen ("Chen Decl."), attached hereto as Exhibit A, at ¶ 3. Defendants sell tens of thousands of different kinds of products through their online marketplace stores, with the accused products constituting only a very minute portion of the products Defendants sell. Ex. A at ¶ 7. All of the Defendants offer the products of which Plaintiff complaints for sale under the trademark "GO SWING" as shown in exhibit B as well as Plaintiffs exhibits in support of its Motion. *See* Ex. B, *see also* Pls. Ex. 2 of the Declaration of Armand Ferranti (Dkt. No. 21-2) at Part 4 (Dkt. No. 21-9), p. 271 (lilybeibei); Part 5 (Dkt. No. 21-10), pp. 47 (qb.studio), 51 (topwardrobe2014), 84-87 (1st.4u), 96-97 (1st.vzu), 98-99 (4hk8033), 100-102 (4utoto), 179 (butonto), 216 (davidcoy), 223-224 (dongmakjhg), 225 (Dr3ag8on), 244 (excellbuying), 252 (fastdealblast), 278-282 (Funnyatmosphere), 289-292 (gracefulvara); and Part 6 (Dkt. No. 21-11), pp. 29 (in.studio), 41 (jewelryzhang888), 59-65 (laptopallfor87), 68 (leihuyoumechenger), 77 (lilybeibei), 87-93 (lucky.shop_7), 94-99 (lucky.warm7), 117-120 (minseaa), 154-157 (priestly), 159-162 (qb.studio), 175-176 (rearrange518), 197 (sgostore), 200-202 (shanghai123456), 212-213 (shirlelyelt), 231 (tinasbox), 241-244 (topkoo), 264-265 (Wi3ndBre1aker), 290 (yhxclx2010). Even more

---

[2] Plaintiff also alleges counterfeiting but fails to show that Defendant has used any spurious or identical mark as required by the Lanham act. *See* 15 U.S.C. §§ 1114, 1127 (Defining a counterfeit mark as a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.").

3

damning for Plaintiff is that Plaintiff's own exhibits show that Defendants have not used either of Plaintiff's trademarks.

To date, Defendants have sold a total of 866 units of the accused product in its lifetime, via their online stores. *Id.* at ¶ 10. The total revenue from the accused product is roughly $2813.14 (¥18095.53 in RMB), which constitutes only 0.03% of the overall sales generated by Defendants through their online stores. *Id.* at ¶7. In the last year alone, Defendants' revenue through online sales was roughly $900 Million. *Id.* And in fact, many of the Defendant Stores have not made a single sale of the accused product at all. *Id.* at ¶ 8. As such, even if Defendants had in fact infringed upon Plaintiff's trademark rights—which they have not—Defendants' sales of the alleged accused product have caused little harm to Plaintiff, if any.

However, on August 3, 2021, Plaintiff filed its *ex parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, an asset restraint, and expedited discovery [Dkt. No. 6], which this Court granted [Dkt. No. 14]. As a result of the TRO in this action, roughly $466,044 currently remain restrained from Defendants' store accounts. *Id.* at ¶ 11. This restriction has caused severe impediments on Baoji Haoyingmao Trading Co., Ltd. ("Haoyingmao"), the operator of the Defendants' stores, who remains prohibited from withdrawing any funds from the restrained accounts. *Id.* at ¶ 11. The restrained accounts include money from sales of goods for the entire store, and as such, cannot be used to pay for Defendants' suppliers and employees as needed. *Id.* Plaintiff now moves this Court to enter a Preliminary Injunction Order ("PIO") [Dkt. No. 21], which if granted, would cause even greater harm to Defendants. As described in detail below, Plaintiff's PIO must be rejected.

### III.     ARGUMENT AND AUTHORITIES

#### A.  Legal Standards Regarding Preliminary Injunction[3]

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The grant of a preliminary injunction is "an exercise of a very far reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If these threshold factors are met, the court proceeds to a balancing phase where it "must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Abbott Labs.*, 971 F.2d at 11–12. In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken. *Id.* at 12 (internal quotations omitted). "The more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief," *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*,

---

[3] Although Plaintiff also discussed the injunctive relief based on 15 U.S.C. § 1116(a), it merely recited what it already discussed for its preliminary injunction request. *See* Dkt. No. 21-1, p. 11-12. This Circuit, however, has used same framework analyzing injunctive relief based on 15 U.S.C. § 1116(a). *See generally Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649 (7th Cir. 2019).

582 F.3d 721, 725 (7th Cir. 2009) (citations omitted), namely, "the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted[,]" *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citation omitted). A preliminary injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

### B. The PIO Should Be Denied Because Plaintiff Is Unlikely to Succeed on The Merits

To prevail on a theory of trademark infringement, false designation of origin, or unfair competition under The Lanham Act, a plaintiff must allege that: (1) it has rights to a protectable mark; and (2) the defendant's use of the mark is likely to cause confusion among consumers. *See Packman v. Chi. Tribune Co.*, 267 F.3d. 628, 638 (7th Cir. 2001). This Circuit recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Abercrombie Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976) (Friendly, J.)). Once a trademark is registered, the mark holder obtains one of two rebuttable presumptions: (1) that the registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning. *See Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986).

In this case, Plaintiff cannot show a likelihood of success on the merits for its claims of trademark infringement as Defendants simply do not use either "DRAFT TOP" or "DRINK TOPLESS", either as a trademark or even in a descriptive sense. As shown below

6

and in Exhibit B and Pls. Exhibit 2, all 31 responding Defendants use the phrase "GO SWING" as a trademark designating the source or origin of their goods.



Pls. Mot. at Ex. 2 of the Declaration of Armand Ferranti, Part 6, 290 (Dkt. 22-11 at 290). Defendants Exhibit B is a collection of all the evidence submitted by Plaintiff in its Exhibit 2 of the Declaration of Armand Ferranti in support of its Motion. As shown in that Exhibit, nowhere do any of the Defendants use either the phrase "DRAFT TOP" or "DRINK TOPLESS" nor do they use any confusingly similar phrasing. As such, Plaintiff has failed entirely to show that Defendants having infringed either of its trademarks, and Plaintiff's Motion must be denied by this Court.[4]

Plaintiff also makes the unfounded and meritless argument that it "submitted extensive documentation showing that Defendants are offering for sale and selling

---

[4] The fact that Plaintiff's own exhibits and submitted evidence clearly shows that Defendants have used neither of Plaintiff's trademarks, and in fact use the entirely dissimilar "GO SWING" mark to sell their products raises serious questions related to Plaintiff's basis for filing this lawsuit and its motion for temporary restraining order.

7

counterfeit products that look confusingly similar" to Plaintiff's products. Dkt. No. 21-1, p. 7-8. To support this assertion, it further states that "the design of both the genuine and counterfeit products are the same molded plastic strip containing three specialized magnets and an adhesive which are used to suspend bottles from the bottom of a refrigerator shelf." *Id*. at p. 8. This argument is entirely without merit and attempts to confuse this Court by conflating patent rights with trademark rights. *See* 15 U.S.C. § 1127 (Defining a "counterfeit mark" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."). Put simply, Plaintiff's trademarks protect the usage of the phrases "DRAFT TOP" and "DRINK TOPLESS" as a source of origin of the goods and services. *See* 15 U.S.C. § 1114. They do not and cannot protect the functional elements which Plaintiff identifies in its Motion and any arguments as such should be soundly rejected by this Court as Plaintiff has identified no such patent rights.

### C. The PIO Should Be Denied Because Plaintiff Has Not Shown Irreparable Harm

Plaintiff must actually show based on the facts of this case that irreparable harm was "likely," not merely possible, in the absence of an injunction. *See Winter*, 555 U.S. at 20-22). In its motion, Plaintiff provided nothing more than its bare boilerplate statements that it will suffer harm because of "diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales." *See* Dkt. No. 21-1, p. 9. Irreparable harm is harm that no monetary damages, however great, could address. Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). However, there must be "a nexus between the asserted infringement and the market injury...." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d

8

1314, 1324 (Fed. Cir. 2012). A "mere showing" that a party "might lose some insubstantial market share as a result of [the] infringement is not enough." *Id*. at 1324-25. "Irreparable harm lies only where injury cannot be undone by monetary damages." *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006). Furthermore, irreparable injury cannot be established by potential lost sales alone. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006). Instead, a party "seeking injunctive relief must make 'a clear showing' that it is at risk of irreparable harm, which entails showing 'a likelihood of substantial and immediate irreparable injury.'" *Id*. at 1325 (quoting *Winter*, 555 U.S. at 22).

Here it is axiomatic that where the Defendants have neither used nor infringed upon either of Plaintiff's trademarks for "DRAFT TOP" or "DRINK TOPLESS" that Plaintiff cannot have suffered an irreparable harm. *See* Ex. B. It would be impossible for Defendants to tarnish the goodwill associated with either mark in the minds of consumers where Defendants have used neither mark. As such, Plaintiff's Motion must be denied as it cannot show an irreparable harm absent an actual infringement.

### D. The Balance of Hardships Weighs in Favor of Denying a PIO

The grant of a preliminary injunction in a trademark case often results in the defendants having to remove a product from the market, or at least drastically modify it, pending trial. Furthermore, given the extended duration of many trademark cases, the defendant may face months or even years before the product can be reintroduced. As a result, the hardship on the defendants can be drastic.

Here, the Court must deny Plaintiff's Motion as the balance of harms clearly weights against granting a PIO. Again, Plaintiff has failed to show *any* act of infringement

9

on the part of Defendants, and as such it cannot show *any harm whatsoever*. In contrast, as a result of the TRO previously issued in this action, roughly $466,044 currently remain restrained from Defendants' store accounts. Chen Decl. at ¶¶7, 9. This restriction has already caused severe impediments on Haoyingmao, the operator of the Defendants' stores, who still remains prohibited from withdrawing any funds from the restrained accounts. *Id.* at ¶ 10. The restrained accounts include money from sales of goods for the entire store, and as such, cannot be used to pay for Defendants' suppliers and employees as needed. *Id.* Defendants have suffered severe financial harm to date as a result of this action and stand to lose even more if Plaintiff's PIO is granted. Therefore, the balance of harms weighs in favor of denying the PIO.

### E. The Public Interest Would Not Be Served by An Injunction.

In this case, an injunction would not serve the public interest, as Plaintiff has fallen far short of showing both irreparable harm and a likelihood of success on the merits in its actions. Setting such a low bar for maintaining a preliminary injunction is certainly not in the public interest. Furthermore, there cannot be a public interest in halting the sale of legitimate competitors where neither party has committed an act of infringement.

### F. The Equitable Relief Sought Is Not Appropriate

As Defendants have discussed in detail above, Plaintiff has not, and in fact cannot show any act of infringement on the part of Defendants, and as such, it cannot suffer any harm whatsoever. Plaintiff's own exhibits sufficiently show that Defendants never infringed Plaintiff's trademarks. Therefore, Plaintiff is not entitled to any injunctive relief against Defendants, expedited discovery, or asset restraint. It is axiomatic that it would be entirely *unequitable* to impose such restrictions absent some showing of actual infringement or harm. On the other side, Defendants have suffered a great loss because of

10

the PTO that is based on Plaintiff's meritless assertions. No limit of Defendants ability to transfer their assets should continue.

### G. Alternatively, The PIO Is Not Supported By A Sufficient Bond

Although Defendants strenuously maintain that the PIO should be rejected, if the Court disagrees, they submit that it should be modified to require a sufficient bond. Before a court may issue a preliminary injunction, Federal Rule of Civil Procedure 65(c) requires that the "movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party . . . wrongfully enjoined." Fed. R. Civ. P. 65(c). "Rule 65(c)'s bond requirement serves a number of functions. It assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir.2011); *see also Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) ("The [injunction] bond can ... be seen as a contract in which the court and the applicant 'agree' to the bond amount as the 'price' of a wrongful injunction")).

In this case, an appropriate bond would be in the amount of at least $5,000,000. Currently, Defendants' total revenue from the alleged infringing sales amounts to $2813.14; however, roughly $466,044 currently remain restrained from Defendants' store accounts as a result of the TRO issued in this case. Chen Decl. at ¶¶7, 9. The total revenue generated from Defendants' stores is over $900 Million from last year. *Id*. at ¶ 7. As such, the amount restrained from Defendants' accounts for its few alleged infringing sale is extremely disproportionate to the $10,000 bond that Plaintiff has been required to in this case to date. Plaintiff has sued 851 defendants in this case. Dkt. No. 5-2. Accordingly,

Plaintiff should be required to post a significant bond—at least in the amount of $5,000,000—if a PIO is granted.

## IV. CONCLUSION

As shown in the above arguments and declarations, Plaintiff cannot succeed on the merits in this case because Plaintiff has failed entirely to show that Defendants have infringed either of its trademarks. For the same reason, Plaintiff has not shown and cannot show that it will suffer irreparable harm because it cannot show an irreparable harm absent actual infringement. Further, the balance of hardship weighs against maintaining an injunction and public interest would not be served by an injunction as—again—there has been no showing of infringement. As such, Plaintiff's request for a PIO should be rejected. Defendants respectfully request this Court to issue an order directing Plaintiff to immediately notify eBay.com and financial institutions of the expiration of the TRO and release Defendants' accounts from any restrictions.

DATED September 16, 2021.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Stevenson Moore V*
　　　　　　　　　　　　　　　　　　　　Stevenson Moore V
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24076573
　　　　　　　　　　　　　　　　　　　　smoore@nilawfirm.com
　　　　　　　　　　　　　　　　　　　　Timothy T. Wang
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24067927
　　　　　　　　　　　　　　　　　　　　twang@nilawfirm.com

　　　　　　　　　　　　　　　　　　　　Ni, Wang & Massand, PLLC
　　　　　　　　　　　　　　　　　　　　8140 Walnut Hill Lane, Suite 500
　　　　　　　　　　　　　　　　　　　　Dallas, Texas
　　　　　　　　　　　　　　　　　　　　972-331-4603
　　　　　　　　　　　　　　　　　　　　Attorneys for yhxclx2010, et al.

**CERTIFICATE OF SERVICE**

　　　　I hereby certify that on the 16th day of September, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

　　　　　　　　　　　　　　　　　　　　*/s/ Stevenson Moore V*
　　　　　　　　　　　　　　　　　　　　Stevenson Moore V